IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE AYALA, SR. | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| TASTY BAKING COMPANY; and LOCAL 6 BAKERY CONFECTIONERY AND TOBACCO WORKERS INTERNATIONAL; JACK GARRETT; CHRISTINE JOHNSON; HALEY ANGELINE | Case No. 2:22-cv-03849-WB |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Jose Ayala, Sr., became employed by Defendants in November 2012. Ayala says that in February 2019 he was seriously injured on the job and became disabled. He says that after his injury, Defendants' Human Resources Department subjected him to discrimination and harassment, and refused to discuss reasonable accommodations with him. Then, Ayala says, when he was medically cleared to return to work without restriction, his supervisor racially harassed him and retaliated against him for his exercise of rights under the Family Medical Leave Act and the Americans with Disabilities Act, and for his reporting racially discriminatory conduct. He alleges 11 counts related to hostile work environment, discrimination, and retaliation under various federal, state, and local laws.

On October 12, 2023, the parties advised the Court in a joint letter that Ayala was experiencing mental-health issues and was unwilling to appear for deposition or "otherwise meaningfully participate in the litigation of this matter in the near term." The Court held a status conference with the parties on October 31, 2023. During the conference, Plaintiff's counsel,

1

Seth Carson, mentioned that he had been paying for a hotel for Ayala, whose living situation had become unstable. The Court ordered that Ayala appear for his deposition in the courthouse on November 9, 2023, which he did. During his deposition, Defendants asked Ayala several questions about his living situation.

On November 27, 2023, Defendant Tasty Baking Company filed a motion to disqualify Carson on the grounds that Carson had been paying Ayala's living expenses, and that paying a client's living expenses violates Pennsylvania Rule of Professional Conduct 1.8. Ayala (through counsel) responded in opposition and requested that the Court consider imposing sanctions pursuant to Federal Rule of Civil Procedure 11(c) because, he said, Tasty's motion was filed "with no legitimate purpose."

For the reasons that follow, Tasty's Motion will be denied, Carson's conduct will be referred to the Disciplinary Committee for the Eastern District of Pennsylvania for further evaluation, and the Court will not sanction Tasty's counsel.

## I. LEGAL STANDARD

### i. *Disqualification*

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it. . . . As a general rule, the exercise of this authority is committed to the sound discretion of the district court." *De La Cruz v. Virgin Islands Water & Power Auth.*, 597 F. App'x 83, 87 (3d Cir. 2014) (citing *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)). Disqualification must "on the facts of the particular case . . . [be] an appropriate means of enforcing the applicable disciplinary rule." *See Miller*, 624 F.2d at 1201. Thus, the analysis (a) first determines whether an ethical rule was violated, and (b) if so, whether disqualification is an appropriate sanction. *See Griffin-El v.*

*Beard*, 2009 WL 2929802 at *10 (E.D. Pa. Sept. 8, 2009).

## II. DISCUSSION

### A. Disqualification is not Warranted at This Time.

#### i. Rule 1.8(e)

Tasty argues that Carson's alleged conduct violates Pennsylvania Rule of Professional Conduct 1.8(e), which provides that:

> A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
>
> 1. a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and,
> 2. a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

Here, Tasty alleges that Carson paid for Ayala's living expenses beyond any directly related to this litigation, and that doing so violated Rule 1.8(e).

The ethical considerations underlying rules on attorneys' paying their clients' living expenses aim to prevent financial entanglements that incentivize frivolous litigation (or at least that may monetarily incentivize litigants to make litigation decisions they might not otherwise make). Such rules descend from the common-law doctrines of barratry (incitement of groundless judicial proceedings, especially between others), maintenance (funding another party's prosecution or defense of a suit), and champerty (agreeing to pay the legal expenses of another in exchange for a cut of the recovery). Dawn S. Garrett, *Lending a Helping Hand: Professional Responsibility and Attorney-Client Financing Prohibitions*, 16 U. Dayton L. Rev. 221, 226-28.[1]

---

[1] *See also* Michael R. Koval, *Living Expenses, Litigation Expenses, and Lending Money to Clients*, 7 Geo. J. Legal Ethics 1117, 1117-18 (1994) ("First, by lending a client money, the lawyer gains a pecuniary interest in the lawsuit which could adversely affect his advocacy for the client, and may lead him to act in other than the client's best interest. Second, allowing a lawyer to have such a pecuniary interest may entice the lawyer to seek out unmeritorious claims, thus causing the churning up of litigation and the clogging of the courts. Finally, the practice

3

### *ii.  Factual Dispute Regarding the Extent of the Payment*

As an initial matter, the parties dispute the extent to which Carson paid Ayala's living expenses.  Tasty says that Carson "is paying for [Ayala's] housing, has been doing so for at least the past two months, and that [Ayala] considers it to be a loan or advance."  It notes that in deposition Ayala "testified that 'my attorney has been providing shelter to me,' that prior to [Carson's] doing so, Plaintiff was 'homeless,'" and that Ayala is "'just thankful and grateful to have room and board and safety.'"

Carson, by contrast, says that "Plaintiff's counsel never paid for his client's living expenses," and that "[a]ll expenses paid for were litigation expenses connected to the litigation of this case."  He explains that Ayala "was not doing well financially and had lost his home" and was living "indigent[ly]" in Atlantic City.  Then, Carson says, when the Court ordered Ayala's deposition, Ayala "did not have transportation [] to Philadelphia, or a place to stay when he arrived."  And because Carson and Ayala "had to review over three thousand [] documents exchanged [during discovery" and prepare for Ayala's deposition, and because Ayala "had other appointments in Philadelphia during that period of time related to his lawsuit," Carson's firm "cover[ed] the cost of travel and accommodations for this time period."  The expenses, Carson says, were "temporary," were only for the purpose of deposition preparation and attendance, "certainly" did not span two months, and were no longer being made when Tasty filed its Motion.

Carson does not explain his comment during the October 31 conference—before the Court ordered Ayala's deposition—that he had already been paying for Ayala's hotel, or Ayala's

---

of lending money to clients could degrade the profession if lawyers begin to compete for clients by offering the best financing incentives.") (citations removed).

deposition testimony that Carson had been "providing shelter" to him for "at least the past two months."  Indeed, as Tasty notes in its Reply, Carson states in his Opposition that he "'covered travel and accommodation expenses for a period of one month,' despite that there were only nine [] days between the Court's October 31, 2023[,] Order scheduling Plaintiff's deposition and the deposition itself on November 9, 2023."[2]

### iii. Disqualification as Remedy in This Case

Ayala (through counsel) correctly notes that violation of an ethical rule does not *require* disqualification.  "Because the power to disqualify stems from a court's authority to supervise the attorneys appearing before it, a decision about whether to use that power is discretionary and 'never is automatic.'" *In re Boy Scouts of Am.*, 35 F.4th 149, 160 (3d Cir. 2022) (citing *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980)); *Kashi v. McGraw-Hill Global Ed. Holdings*, 2018 WL 4094958, at *4 (E.D. Pa. Aug. 27, 2018).  "Even when an ethical conflict exists (or is assumed to exist), a court may conclude based on the facts before it that disqualification is not an appropriate remedy." *Id.*  A motion for disqualification pits several important judicial interests against one another, and the Court must consider them all: "Relevant factors depend on the specifics of the case, but generally include the ability of litigants to retain

---

[2] Another potentially unresolved factual matter involves the nature of the agreement, if any, between Ayala and Carson.  Tasty says that Ayala "had to pay Mr. Carson back" for the lodging expenses.  It notes that Comment 10 to Rule 1.8 disallows "loans to clients for living expenses" (emphasis added): "Lawyers may not subsidize lawsuits . . . brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses."  And it argues that Ayala's deposition testimony reveals "it is undisputed" that Ayala "considers it to be a loan or an advance."

But the deposition transcript indicates that Ayala himself did not call the arrangement a "loan"—when Tasty's counsel asked Ayala whether Carson's payment amounted to "a loan," Ayala responded, "it's nothing free in this world, respectfully," and that while he personally thought of the arrangement as "maybe an advancement," he and Carson "ha[d]n't discussed that" and he was "just thankful and grateful to have room and board and safety."  In context, it seems likely that Ayala meant his statement of intent to repay Carson as an expression of gratitude instead of a reflection of a business agreement.  (In fact, when Tasty's counsel asked Ayala whether he and Carson made "any written agreement about it," Ayala said "no.")

loyal counsel of their choice, the ability of attorneys to practice without undue restriction, preventing the use of disqualification as a litigation strategy, preserving the integrity of legal proceedings, and preventing unfair prejudice. . . . And, indeed, courts in our Circuit often deny disqualification even when finding or assuming conflicts under the professional conduct rules." *Id.* (citations removed) (affirming Bankruptcy Court's decision not to disqualify an attorney, even without definitively deciding whether the attorney had violated any professional-responsibility rules).

*Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp.2d 518 (1999), closely addresses Pennsylvania Rule 1.8(e) in the context of a client's living expenses. In that case, Great Lakes argued that Shade's attorney should be disqualified because he "[provided] an apartment and associated costs for Shade and his family." (The facts were not in dispute.) The payment, Great Lakes said, violated Rule 1.8. The court declined to make a finding regarding whether Shade's attorney violated Rule 1.8 and decided not to disqualify him.

Both parties here make use of *Shade*. Ayala argues that, as Shade's attorney was not disqualified for providing living expenses, Carson should not be disqualified for providing living expenses. Indeed, Shade and his wife began occupying the firm-provided housing after Shade became homeless and his wife began experiencing mental-health issues. *Shade*, 72 F. Supp.2d at 520. Tasty responds that *Shade* is distinguishable because Shade's attorney's firm "already owned [the] apartment" for the purpose of "housing out-of-town clients and experts," so it "would have had expenses for that apartment regardless of whether the Shades lived there." (In other words, the ethical concerns regarding conflict of interest, Tasty argues, were fewer in *Shade* than here).

But regardless of the similarities or dissimilarities between the facts of *Shade* and the

6

facts of this case, *Shade* exemplifies a key principle:  Disqualification is not warranted—even if an ethical rule was violated—when it "is not necessary to effectuate the purposes of the rule or protect the integrity of the legal process" in a particular case.  *Shade*, 72 F. Supp.2d at 521.  Here, the Court is not convinced disqualification would be *necessary* to effectuate the purposes of Rule 1.8, even if it were clear beyond dispute that Carson violated it.  *Shade* also urges caution where, as here, a party "argues for disqualification based solely on its expressed concern for the legal system and for [the client of the attorney in question] but does not suggest that its own ability to prepare for trial or present its case will be hampered." *Id.* at 522.  Further, the *Shade* court noted it could not envision "any public interest that would outweigh Shade's interest in continuing to work with [his attorney]; in fact, the danger of public dissatisfaction with the legal process appears to be greater from the last[-]minute disqualification of an attorney who apparently provided housing for a client who was faced with dire financial circumstances." *Id.*

As in *Shade*, given the factual record here, the Court determines that Carson's disqualification is not warranted at this time.

### B.  The Matter Will Be Referred to the Disciplinary Committee of the Eastern District of Pennsylvania for Further Consideration.

Local Rule 83.6(V)(A) provides that:

> When the misconduct or other basis for action against an attorney . . . or allegations of the same which, if substantiated, would warrant discipline or other action against an attorney admitted to practice before this court shall come to the attention of a judge of this court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these rules, the judge shall refer the matter to the Chief Judge who shall issue an order to show cause.

Because of the apparent factual contradictions between the accounts of Ayala, Carson, and Tasty, the Court cannot with certainty determine the extent to which Carson violated any ethical rules, so the Court will refer the matter to this District's Disciplinary

7

Committee for evaluation.

A district court is not required to "hold a separate evidentiary hearing and make detailed factual findings" before a disqualification ruling. *See De La Cruz v. Virgin Islands Water & Power Auth.*, 597 F. App'x 83, 89 (3d Cir. 2014) (citing *United States v. Voigt*, 89 F.3d 1050, 1075 (3d Cir.1996)). In any case, the Disciplinary Committee of the Eastern District of Pennsylvania is better equipped to investigate a potential ethics violation. Accordingly, the Court will refer the matter to the Disciplinary Committee for the Eastern District of Pennsylvania.

### C. Sanctions Against Tasty Are Not Warranted.

Ayala argues through counsel that Tasty should be sanctioned because its Motion is "improper" and was "filed with no legitimate purpose." He says that Tasty "offered absolutely no legal support for disqualification," and that the cases it cites are "extremely misleading." He raises "concern" regarding Tasty's "candor to the tribunal" and alleges that Tasty's Motion "is based on statements . . . that [Tasty] knew or should have know[n] were categorically false." He also argues that Tasty's counsel should have discussed the motion with Carson in greater detail before filing it because, he says, "[t]he spirit of Rule 11 is in making opposing counsel aware of an accusation before it is made public." He characterizes Tasty's Motion as an "ambush."

It is not clear at each turn of Ayala's Opposition exactly which aspects of Tasty's motion Ayala believes are sanctionable (as opposed to those with which he has a legal disagreement). In any case, the Court need not examine these accusations in detail. For one thing, as explained above, the extent to which Tasty's Motion contained "categorically false" statements cannot be determined while the parties dispute the facts at issue. For another, divergent (or even incorrect) interpretation of caselaw is not sanctionable, and Ayala cites no caselaw suggesting it should be.

*See Teamsters Loc. Union No. 430 v. Cement Exp., Inc.*, 841 F.2d 66, 68 (3d Cir. 1988) ("Rule 11 is intended only for exceptional circumstances").  In fact, the Third Circuit has gone further:

> [W]hen issues are close, the invocation of Rule 11 borders on the abusive: We caution litigants that Rule 11 is not to be used routinely when the parties disagree about the correct resolution of a matter in litigation. . . .  Nothing in the language of the Rule or the Advisory Committee Notes supports the view that the Rule empowers the district court to impose sanctions on lawyers simply because a particular argument or ground for relief contained in a non-frivolous motion is found by the district court to be unjustified.

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987) (citations removed).

Sanctions against Tasty are not justified here.

### III.  CONCLUSION

For these reasons, Tasty's Motion will be denied, no sanctions will issue, and the matter of Carson's alleged payment of Ayala's living expenses will be referred to the Disciplinary Committee of the Eastern District of Pennsylvania for further evaluation.

An appropriate order follows.

BY THE COURT:

*/s/ Wendy Beetlestone*

**WENDY BEETLESTONE, J.**